# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA REGINA AVERILL-MARCOGLIESE,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1]<br><br>Defendant.<br>_____/ | Case No. 1:21-cv-00277-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Samantha Regina Averill-Marcogliese ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   BACKGROUND

Plaintiff was born on October 1, 1964, has at least a high school education, and previously worked at a plumbing supply store. (Administrative Record ("AR") 24, 25, 41–43, 367, 371, 379,

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 8.)

407.) Plaintiff filed a claim for DIB payments on September 30, 2014, alleging she became disabled on June 1, 2008, due to back, spinal, and neck injuries; chronic headaches; chronic pain; depression; nerve issues in hand; arm numbness; dizziness; and forgetfulness. (AR 18, 94, 95, 103, 104, 367, 370, 371, 379, 407.)

After her prior request for a hearing was dismissed (AR 112–17), Plaintiff appealed to the Appeals Council, which, on July 19, 2018, remanded the case to give Plaintiff another opportunity for a hearing. (AR 118–20.) The ALJ then conducted a hearing and issued a written decision finding Plaintiff not disabled. (AR 18–27.)

**A.    Relevant Evidence of Record[3]**

   **1.    Medical Evidence**

In January 2007, Plaintiff complained of right hip and low back pain caused by a fall from her bike in September 2006. (AR 483.) An x-ray of Plaintiff's lumbar spine showed "minor degenerative change" and "[n]o other finding of significance." (AR 482, 818.) In March 2007, an MRI of Plaintiff's lumbar spine showed "[a] posterior disk component at L4-5 thought to be consistent with a small herniation . . . ." and "[a] prominent posterior disk at L3-4." (AR 491, 819.)

Plaintiff presented for a gynecological exam and physical in April 2008. (AR 717–20.) She reported increased stress and nervousness. (AR 717.) The treatment note observed that Plaintiff both "exercises fairly regularly and appropriately for age and health" and "does not exercise regularly." (AR 718.)

In January 2010, Plaintiff presented to Nikki Donaldson, D.O., complaining of abdominal pain and worsening low back pain. (AR 679.) Upon examination, Dr. Donaldson noted tenderness over the sacroiliac joint, but negative straight leg test, full range of motion, no instability, and normal strength and tone. (AR 680.) She noted a diagnosis of "worsening" low back pain. (AR 680.)

   **2.    Opinion Evidence**

In January 2017, treater Dr. Donaldson wrote a letter indicating that she had been treating

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff since 2006 for hip, back, and joint issues, as well as for depression and anxiety for "the past several years." (AR 817.) Dr. Donaldson stated that Plaintiff "has experienced pain, loss of range of motion, numbness, stiffness, tingling, joint and muscle issues with these surgery's [sic] and her prior injury's [sic] to my knowledge, from 2006 to present time, which I am currently still treating her for all issues stated in this letter." (AR 817.) She opined that Plaintiff "would most likely never be able to [do her usual and customary work] with all the neck, back and shoulder injuries she has experienced," and that Plaintiff "will have symptoms and pain from her injuries for the rest of her life." (AR 817.)

In April 2019, Dr. Donaldson completed a physical medical source statement. (AR 851–54.) Dr. Donaldson opined that Plaintiff could lift and carry 10 pounds occasionally, and less than 10 pounds frequently; stand and walk less than two hours; and sit for less than two hours total in an eight-hour workday. (AR 852–53.) Dr. Donaldson further opined Plaintiff could twist frequently, but not the neck, and can occasionally stoop, bend, crouch, squat, and climb stairs, but she should never climb ladders. (AR 853.) In addition, she found Plaintiff has limitations with reaching, handling, and fingering, and she will need to take three unscheduled 15-minute breaks in both the morning and afternoon of every workday. (AR 852–53.) According to Dr. Donaldson, Plaintiff also needs to elevate her legs two to three feet 100% of the time during an eight-hour workday, and will likely be absent from work more than four days per month. (AR 852–53.) She stated that the "earliest date" the opined functional limitations would apply is April 11, 2019. (AR 854.)

Following the hearing, the ALJ issued written interrogatories to impartial medical expert Subramaniam Krishnamurthi, M.D. (AR 18, 975.) Dr. Krishnamurthi completed the interrogatories in June 2019. (AR 976–86.) He opined that from June 1, 2008, through June 30, 2013, Plaintiff was able to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; stand three hours total; walk three hours total; and sit for six hours total in an eight-hour workday. (AR 976–77.) Dr. Krishnamurthi further opined Plaintiff was able to operate foot controls with the bilateral feet frequently and could frequently reach, handle, finger, feel, push, and pull with the bilateral upper extremities. (AR 978.) In addition, according to Dr. Krishnamurthi,

Plaintiff was able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but she should never climb ladders, ropes, or scaffolds. (AR 979.) Plaintiff can frequently operate a motor vehicle; tolerate frequent exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations; and she can tolerate occasional exposure to unprotected heights and moving mechanical parts. (AR 980.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on February 13, 2015, and again on reconsideration on May 14, 2015. (AR 121–24, .) After her prior request for a hearing was dismissed (AR 112–17), Plaintiff appealed to the Appeals Council, which, on July 19, 2018, remanded the case to give Plaintiff another opportunity for a hearing. (AR 118–20.)

The ALJ then conducted a hearing on June 12, 2019; Plaintiff appeared with counsel and testified as to her alleged disabling conditions. (AR 41–74.) At the hearing, Plaintiff testified she had prior work as an office manager at a plumbing contracting office and at a plumbing supply store. (AR 41–47.) She testified that she has been unable to work since 2008 because of pain in her back and neck. (AR 47.) Her symptoms included pain, numbness, and tingling in her hands, shoulders, and neck; sciatic pain down her legs; and pain in her lower back. (AR 53–54.) . According to Plaintiff, she has weakness in her arms and shoulders when trying to pick up her one-year-old granddaughter. (AR 55.) She testified she does not have "good range of motion" in her neck. (AR 54.) She can lift eight-to-ten pounds but does not reach overhead due to pain. (AR 53, 55.) Plaintiff testified she can use her hands for 20 minutes before they become numb, but then she must rest them for 40 to 45 minutes before she can use them again. (AR 55–56.) She can stand for 20 minutes but then needs to sit in a recliner for 30 minutes to alleviate the pain in her lower back. (AR 56–57.) Plaintiff testified she can sit for one hour before she needs to get up because of stiffness. (AR 64.) She elevates her legs in the recliner for about half of the day, and alternates positions throughout the day. (AR 57, 64.)

A VE also testified at the hearing. (AR 57–71.) She testified that Plaintiff had past relevant work as a composite of accounting clerk, Dictionary of Operational Titles ("DOT") code 216.482-010, with a medium exertional level as generally performed and a specific vocational preparation

4

(SVP)[4] of 5; salesperson, parts (counter clerk), DOT code 279.357-026, with a medium exertional level as generally performed and an SVP of 5; and shipping clerk, DOT code 222.387-050, with a medium exertional level as generally performed and an SVP of 5. (AR 58–60, 66.)

The ALJ asked the VE a hypothetical question in which the VE was to consider a person of Plaintiff's age, education, and work experience, who can: lift or carry 20 pounds occasionally and ten pounds frequently; stand or walk at least six out of eight hours; occasionally climb ramps or stairs; never climb ladders or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; and never work at unprotected heights or around fast-moving machinery. (AR 59–60.) The VE testified that such a person could not perform Plaintiff's past relevant work as she had performed it, but could perform such work per the DOT. (AR 60.) The VE further testified that her testimony would not change if a limitation to "frequent" reaching and/or fingering and feeling were added to hypothetical one. (AR 60.) The VE further testified that if a limitation to "occasional" reaching and/or fingering and feeling were added to hypothetical one, it would preclude all work. (AR 61.)

In another hypothetical, the VE was asked by the ALJ to consider an individual of Plaintiff's age, education, and work experience who can: lift or carry ten pounds occasionally, and less than ten pounds frequently; stand or walk at least two out of eight hours; sit for at least six out of eight hours; can only occasionally climb ramps or stairs; never climb ladders or scaffolds; can occasionally balance, stoop, kneel, and crouch; never crawl; never work at unprotected heights or around fast-moving machinery; and frequently reach, handle, finger or feel. (AR 61.) The VE testified that such a person could perform the unskilled sedentary positions of table worker, DOT code 739.687-182 and SVP 2; lens inserter DOT code 713.687-026 and SVP 2; and ampoule sealer, DOT code 559.687-014 and SVP 2. (AR 63.)

Plaintiff's attorney asked the VE whether the following limitations would preclude all work: requiring three unscheduled breaks of 15 minutes each per day in addition to regular breaks;

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

5

requiring leg elevation to hip level for 25 percent of the day; being off task 15 percent of the workday; and absenteeism from work of two days a month. (AR 67–68.) The VE responded that such limitations would preclude all work. (AR 67–68.)

**C.     The ALJ's Decision**

In decision dated October 3, 2019, the ALJ found that Plaintiff was not disabled. (AR 18–27.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 20–27.) The ALJ decided that Plaintiff met the insured status requirements of the Act through June 30, 2013, and she had not engaged in substantial gainful activity during the period from her alleged onset date of June 1, 2008, through her date last insured of June 30, 2013 (step one). (AR 20.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease. (AR 20–21.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 21.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that, through the date last insured, Plaintiff had the RFC:

> to perform a range of work at the sedentary exertional level as defined in 20 [§] CFR 404.1567(a).  Specifically, she was able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand at least three hours, walk at least three hours, and sit for at least six hours total in an eight-hour workday. She could occasionally balance, stoop, kneel, crouch, and climb ramps or stairs, but she was unable to crawl or climb ladders or scaffolds. In addition, [Plaintiff] was able to frequently reach, handle, finger, and feel, but she could not work at unprotected heights or around fast moving machinery.

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

(AR 21–24.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 24.) The ALJ determined that Plaintiff was unable to perform her past relevant work (step 4), but was not disabled because, given her RFC, she could perform a significant number of other jobs in the local and national economies, specifically table worker, lens inserter, and ampoule sealer (step 5). (AR 25–26.) The ALJ concluded Plaintiff was not disabled at any time from June 1, 2008, the alleged onset date, through June 30, 2013, the date last insured. (AR 26.)

Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on May 27, 2020. (AR 6–11.) Therefore, the decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If

7

> so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may

not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ improperly evaluated the medical opinion evidence, specifically that given by Drs. Donaldson and Krishnamurthi, and erred in discounting her subjective symptom testimony. (*See* Doc. 14.)

The Acting Commissioner responds that that the ALJ's treatment of the medical opinion evidence was correct, and that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms. (*See* Doc. 16.)

**A.   The ALJ Erred in Evaluating Dr. Donaldson's 2017 Opinion**

**1.   Legal Standard**

The medical opinions of three types of medical sources have been recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." [6] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

---

[6] Plaintiff filed her DIB claim before March 27, 2017, so Section 404.1527, not Section 404.1520c, governs the ALJ's evaluation of medical opinions. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157[7], except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

**2.   Analysis**

Plaintiff alleges, and the record reflects, that Dr. Donaldson was Plaintiff's treating

---

[7] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

10

physician beginning in 2006. (AR 23, 487, 817.) In January 2017,[8] Dr. Donaldson wrote a letter stating that Plaintiff "has experienced pain, loss of range of motion, numbness, stiffness, tingling, joint and muscle issues with these surgery's [sic] and her prior injury's [sic] to my knowledge, from 2006 to present time, which I am currently still treating her for all issues stated in this letter." (AR 817.) She opined that Plaintiff "would most likely never be able to [do her usual and customary work] with all the neck, back and shoulder injuries she has experienced," and that Plaintiff "will have symptoms and pain from her injuries for the rest of her life." (AR 817.) Although not specifically identified by the ALJ as a basis for its rejection, Dr. Donaldson's opinion is contradicted by the opinion of the impartial medical expert, Dr. Krishnamurthi. (AR 976–79.) Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Donaldson's opinion. *Trevizo*, 871 F.3d at 675.

The ALJ gave Dr. Donaldson's opinion "very little weight" because

> it is conclusory and inconsistent with the evidence from that period. For example, it is inconsistent with a report showing [Plaintiff] was exercising regularly and appropriately for her age and health (Exhibit 9F, p. 155). The opinion is also inconsistent with a report showing a straight leg raise test was negative, and she exhibited a full range of motion with no instability and normal strength and tone (Exhibit 9F, p. 117). In addition, the opinion is discounted because it does not provide a function-by-function assessment of [Plaintiff's] functional ability.

(AR 23.) These explanations cannot withstand scrutiny.

### a. Lack of "function-by-function" assessment

Taking the second reason first, the law in this circuit is not settled on whether the lack of a function-by-function assessment is a valid reason for an ALJ to discount a medical opinion. On the one hand, the Ninth Circuit seems to suggest that it is a valid basis. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (suggesting that an ALJ may discount an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (suggesting that an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" and does not include "any named limitations such as the inability

---

[8] The ALJ mistakenly characterizes Dr. Donaldson's letter as "undated." (*See* AR 23.)

11

to lift, stoop, walk, stand or sit"); *see also Gerde v. Berryhill*, No. C14-5679-MAT, 2018 WL 2193194, at *3 (W.D. Wash. May 14, 2018) ("The lack of specificity as to functional limitations is a legitimate reason to discount a medical opinion."); *Beltran v. Berryhill*, No. CV15-8775-AS, 2017 WL 3523950, at *4 (C.D. Cal. Aug. 16, 2017) ("The lack of clinical findings supporting the extreme limitations and the lack of a function-by-function assessment or narrative were specific and legitimate reasons for rejecting the opinion of Dr. Srinivasan.").

However, many district courts in the Ninth Circuit have recently rejected the lack of function-by-function analysis as a valid basis to discount a medical opinion, particularly that of a treating physician. *See, e.g., Campuzano v. Comm'r of Soc. Sec.*, No. 20-CV-721-WQH(WVG), 2021 WL 3093571, at *10–11 (S.D. Cal. July 22, 2021); *Haas v. Saul*, No. 19-CV-02189-BGS, 2021 WL 615053, at *6 (S.D. Cal. Feb. 17, 2021) ("Failing to provide a function-by-function analysis is not a sufficient reason for rejecting a medical source's opinion, especially from a treating physician") (citing cases); *Julie S. v. Berryhill*, No. 2:18-cv-02352-MAA, 2019 U.S. Dist. LEXIS 14290, at *8-9 (C.D. Cal. Jan. 29, 2019) (collecting cases); *Demko v. Comm'r of Soc. Sec.*, No. 15cv906-LAB(BLM), 2016 WL 1072837, at *6 (S.D. Cal. Feb. 11, 2016) ("[T]here is no requirement in the regulations or Social Security Rulings that a medical source opinion must provide a 'function by function' analysis, nor does the lack of such an analysis provide a proper basis for an opinion's outright rejection.") (internal quotations and citation omitted).

It also appears that even the Commissioner has sometimes declined to defend this position on appeal. *See, e.g., Elizabeth F. v. Comm'r SSA*, No. 3:19-cv-00202-YY, 2020 WL 5870205, at *6, (D. Or. Aug. 10, 2020) ("The Commissioner does not defend the validity of the ALJ's function-by-function rationale."); *Mary M. v. Comm'r of Soc. Sec.*, No. 19CV327-JR, 2020 WL 2556353, at *3 n.3 (D. Or. May 20, 2020) ("The Commissioner concedes that the lack of a function-by function assessment is not a valid reason to discount the opinion."). In this case, the Acting Commissioner does not make much of an effort to defend this portion of the ALJ's reasoning.[9]

---

[9] Instead, the Acting Commissioner suggests that the ALJ's rejection of Dr. Donaldson's opinion was proper because it opined on an issue "reserved for the Commissioner." (Doc. 16 at 9.) Even if this had been a reason given by the ALJ (and not a post-hoc rationale advanced by the Acting Commissioner), it is not in itself a specific and legitimate reason to reject the opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (The ALJ may not simply

(*See* Doc. 16 at 8–9.)

Here, in view of the weight of the recent persuasive authority in this Circuit rejecting the use of a lack of a function-by-function analysis to discount a provider's opinions, the Court finds that the ALJ erred when they cited this as a reason for discounting Dr. Donaldson's 2017 opinion.

### b. *Inconsistent with medical evidence*

The remaining reason given for assigning "very little weight" to Dr. Donaldson's 2017 opinion, that it was "conclusory and inconsistent with the evidence from that period," is equally erroneous because it is insufficiently supported. For this finding, the ALJ cites to two pages from the 989-page administrative record: (1) an April 2008 treatment note observing that that Plaintiff both "exercises fairly regularly and appropriately for age and health" and "does not exercise regularly" (AR 718) and (2) a January 2010 record of an examination by Dr. Donaldson indicating tenderness over the sacroiliac joint, but negative straight leg test, full range of motion, no instability, and normal strength and tone, with a diagnosis of "worsening" low back pain (AR 680). The ALJ does not explain how these two treatment notes, which appear to be an improper attempt to "cherry pick" from the record, undermine the functional limitations opined by Dr. Donaldson. While an ALJ may properly discount a treating physician's opinion that is inconsistent with the medical record, they cannot isolate favorable portions of the record to so. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." (citations omitted)); *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding that "the ALJ's specific reason for rejecting [a physician's] medical opinion [was] not supported by substantial evidence" because, in part, "the ALJ selectively relied on some entries in [the plaintiff's] records . . . and ignored the many others that indicated continued, severe impairment"); *Reddick*, 157 F.3d at 722–23 (An ALJ may not "cherry pick" from a record to support the conclusion, but rather must account for the context of the whole record.).

---

reject the treating physician's opinion on the ultimate issue of disability.) *See also Lyon v. Comm'r of Soc. Sec.*, No. 1:16–cv–01634-SAB, 2017 WL 6040422, at *5 (E.D. Cal. Dec. 6, 2017).

1    Moreover, the ALJ's reliance on these particular notes is odd, considering that one is
2 entirely ***internally inconsistent*** (observing that Plaintiff both "exercises fairly regularly and
3 appropriately for age and health" and "does not exercise regularly," *see* AR 718) and the other
4 documents examination findings (tenderness over the sacroiliac joint and "worsening" low back
5 pain, *see* AR 680) that are ***consistent*** with the "back injuries" that Dr. Donaldson attributed as a
6 cause of Plaintiff's limitations (and with the degenerative disc disease that the ALJ themself found
7 severe). (*See* AR 817.  *See also* AR 20–21.)  The ALJ cites no other medical evidence to support
8 their finding that Dr. Donaldson's 2017 opinion was "inconsistent with the evidence from" the
9 relevant period, and neither the Court, nor the Acting Commissioner post-hoc, may "comb the
10 administrative record" to find support for his finding.  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th
11 Cir. 2014).  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to
12 review the reasons the ALJ asserts.").  In the absence of any explanation by the ALJ, the Court is
13 unable to determine whether they properly considered all of the medical evidence in rejecting Dr.
14 Donaldson's limitations, and thus that rejection cannot be upheld at this time.  *See Garrison*, 759
15 F.3d at 1012–13 (An ALJ errs by assigning a medical opinion "little weight while doing nothing
16 more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his
17 conclusion.").

18    In light of the foregoing, the Court finds that the ALJ failed to provide legally sufficient
19 reasons for rejecting the 2017 opinion of Dr. Donaldson.  Moreover, the Court cannot conclude
20 that the error below was harmless.  *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054).  If
21 the ALJ were to have accepted any part of the rejected opinion, the ALJ likely would have reached
22 an RFC determination with greater limitations than those assessed.  (*Compare* AR 817 *with* AR
23 21.)  A substantial likelihood exists that the ALJ's improper rejection of the opinion evidence
24 affected the result and therefore was not "inconsequential to the ultimate nondisability
25 determination," so the error was not harmless.  *Molina*, 674 F.3d at 1121–22.

26 **B.    The ALJ's Error Warrants Remand for Further Proceedings**

27    Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is
28 "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc.*

14

*Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Having found that the ALJ failed to articulate legally sufficient for rejecting opinion evidence, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings will be useful. In particular, the ALJ's RFC determination conflicted with such opinion evidence, and can be remedied with further proceedings to accord an opportunity to the ALJ to resolve this conflict. *Cf. Dominguez v. Colvin*, 808 F.3d 403, 408–09 (9th Cir. 2016); *Lule v. Berryhill*, Case No.: 1:15-cv-01631-JLT, 2017 WL 541096, at *6 (E.D. Cal. Feb. 10, 2017) ("When there is conflicting medical evidence, 'it is the ALJ's role to determine credibility and to resolve the conflict.'") (quoting *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). On remand, the ALJ should address this error by properly evaluating the medical evidence and re-assessing Plaintiff's functional limitations considering that evaluation and the other medical evidence of record.

The Court will, therefore, remand this matter for further proceedings.

**C.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider the medical opinion evidence and reassess Plaintiff's RFC, the Court need not address Plaintiff's allegations of error

15

concerning the evaluation of Dr. Donaldson's 2019 opinion and the treatment of Plaintiff's subjective complaints (*see, e.g.*, Doc. 14 at 14–16, 21–25).[10] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Samantha Regina Averill-Marcogliese and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **June 20, 2023**                          /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[10] The Court nonetheless observes that the ALJ relied on the same two cherry-picked treatment notes discussed above in rejecting both the 2019 opinion and Plaintiff's subjective complaints.  (*See* AR 22, 24 (citing AR 680 & AR 718).)